UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| THOMAS HICKEY, )<br><br>Plaintiff, )<br><br>v. )<br><br>STEVEN W. TOMPKINS, MICHAEL )<br>COLWELL, YOLANDA SMITH, )<br>JAMES QUIRK, ARUN CHAUDHARY, )<br>and NAPHCARE, INC., )<br><br>Defendants. ) | Civil No. 19-11349-LTS |

MEMORANDUM AND ORDER ON
DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT (DOC. NOS. 64 & 68)

March 8, 2021

SOROKIN, J.

In this action, Plaintiff Thomas Hickey, an inmate proceeding pro se, alleges that a number of state prison officials violated his federal rights by denying him access to certain medications. Before the Court are Defendants James Quirk, Arun Chaudhary, and NaphCare, Inc.'s (the "NaphCare Defendants") Motion for Summary Judgment (Doc. No. 64) and Defendants Seven Tompkins, Michael Colwell, and Yolanda Smith's (the "Suffolk County Defendants") Motion for Summary Judgment (Doc. No. 68). For the reasons which follow, both motions are ALLOWED.

I.     BACKGROUND

       A.     Factual Background

The undisputed facts are as follows.[1] Hickey suffers from opiate addiction and nerve pain. Doc. No. 31 ¶ 2. He has worked closely with doctors to overcome his addiction since January 2016, after experiencing a near fatal overdose. Id. ¶ 6. Prior to his incarceration, Hickey and his doctors experimented with a variety of treatments to control his nerve pain and opiate addiction before ultimately settling on the use of Gabapentin to control his nerve pain, id. ¶ 4, and Suboxone to control his opiate addiction, id. ¶ 3. Hickey reports that this combination proved effective and that he was responding positively to treatment prior to the events at issue in this lawsuit. Id. ¶ 10.

Suboxone is a drug used in the treatment of opiate addiction. A person taking Suboxone will not get a "kick" from heroin. Doc. No. 66 ¶ 4. Although it is itself a type of opiate, Suboxone prevents patients from experiencing pleasure or gain when ingesting opiates, helping them avoid overdoses and control their addiction. Id. Opiate addiction treatment programs which use Suboxone (or other similar drugs) alongside traditional forms of addiction treatment, such as counseling, are commonly referred to as Medication Assisted Treatment ("MAT") programs. Id. ¶ 1.

Gabapentin is an anticonvulsant or antiepileptic drug used to control seizures. Id. ¶ 105; Doc. No. 32 ¶ 9. It is not authorized for use to treat pain but is occasionally prescribed by doctors "off label" for that purpose. Doc. No. 66 ¶ 105 (citing Rachel V. Smith et al., Gabapentin Misuses, Abuse and Diversion: A Systematic Review, 111 Addiction 1160, 1160 (2016)). Gabapentin is not considered addictive, but it can be misused for recreational purposes, self-

---

[1] In support of their motions for summary judgment, the defendants have submitted a number of affidavits and other evidence to support their contentions. See, e.g., Doc. No. 66 (statement of facts). Hickey has not submitted any evidence other than his Amended Complaint, which is verified. Doc. No. 31. A verified complaint is treated as though it were an affidavit for purposes of summary judgment. See Goodman v. Diggs, 986 F.3d 493, 498 (4th Cir. 2021).

medication, or intentional self-harm. Id. It is capable of creating a sense of euphoria, making it a desirable commodity at high risk of diversion in the prison environment. Id. Massachusetts has designated Gabapentin as an "additional drug" for which prescriptions must be reported to the Commonwealth's Prescription Awareness Program. Id. (citing 2016 Mass. Acts, ch. 52, § 69).

Hickey was arrested and admitted to the Nashua Street Jail on December 7, 2018. Doc. No. 31 ¶ 11. During intake, a nurse asked Hickey what medications he was taking and informed him that he would likely not be allowed to continue on Gabapentin and Suboxone because some inmates abuse those drugs. Doc. No. 32 ¶ 12. Hickey was slowly tapered off of Gabapentin and was given treatment for opiate withdrawal. Doc. No. 24-2 ¶¶ 6B, 6F. As part of this treatment, Hickey was prescribed a variety of drugs to relieve the symptoms of opiate withdrawal, namely Clonidine (scheduled twice daily), and Dicyclomine, Loperamide, Ondansetron, and Ibuprofen (as needed). Id. ¶ 6B. Prison nursing staff also monitored Hickey's comfort and progress as he achieved withdrawal in twice daily visits. Id. ¶ 6D. Hickey reports that he twice attempted suicide during this process due to the physical and mental pain. Doc. No. 31 ¶ 14. His prison healthcare providers report, however, that Hickey suffered only minor withdrawal symptoms and note the absence of any records documenting his reported suicide attempts. Doc. No. 24-3 ¶ 8.

Hickey first requested that the defendants prescribe him Gabapentin and Suboxone in late 2018 or early 2019.[2] At around the same time, the Massachusetts State Legislature enacted a provision into law authorizing Defendant Steven Tompkins, Suffolk County Sheriff, to initiate a

_____

[2] Hickey alleges that he first asked about being returned to his preferred medications "on or around 12/10/19." Doc. No. 32 ¶ 15. The Court assumes this to be a scrivener's error, given that this case was filed well before that date. See Doc. No. 1. The Court rules that Hickey meant to state he first asked about his preferred medications in late 2018. This largely aligns with the defendants' version of events—they report Hickey first filed a formal request for his preferred medications on March 28, 2019. Doc. No. 24-3 ¶ 7; Doc. No. 66 ¶ 32. In any event, the precise timing of Hickey's first request is immaterial.

MAT treatment program for prisoners in his custody. Doc. No. 66 ¶ 3 (citing 2018 Mass. Acts. ch. 368). According to the defendants, safely implementing a MAT program presented significant logistical and security concerns. Suboxone is just one component of a broader program of treatment which had to be organized, including counseling, classes, and social support. Id. ¶ 6. The authority to prescribe Suboxone is regulated by the United States Department of Health and Human Services and practitioners seeking authorization must include in their application information about their ability to refer patients for appropriate counseling and other services. Id. ¶ 5. At the time of Hickey's arrest, no staff employed at the jail were authorized to prescribe Suboxone. Id. ¶ 5. After receiving legislative authorization to begin MAT programming, the Suffolk County Sheriff's Department initiated a competitive procurement process and executed a contract with a healthcare provider to secure Suboxone treatment in August 2019. Id. ¶¶ 6–7. Hickey began Suboxone treatment that same month and the record reflects he has continued to receive Suboxone ever since. Id. ¶ 52.

Hickey has never been prescribed Gabapentin by the defendants, despite his repeated requests. He has, however, been provided with a wide variety of alternative treatments to help him manage his nerve pain. For example, Hickey has been prescribed alternative pain relief medications, id. ¶¶ 15, 24, 27, 29, 33, 34, 42, 43, 46, 67, 99, 100, 104, received steroid and anti-inflammation injections, id. ¶¶ 45, 48, 50, 82 83, been granted adjustments to his living conditions, id. ¶ 13, and had regular meetings with medical providers to assess his progress, id. ¶¶ 10–103. Hickey was offered Gabapentin in May 2019 on condition he agreed to reside in the more secure Medical Housing Unit. Id. ¶ 107. Hickey declined, saying that he "d[id] not feel that he need[ed] it that much." Id. ¶ 40. The defendants have worked with Hickey to manage his nerve pain and their treatment plan appears to be working: Hickey stated in February 2020 that

he does not feel he needs Gabapentin any longer and that he would rather stick with another medication he had recently been prescribed Id. ¶ 100.

B.   Procedural Background

Hickey initiated this action on June 17, 2019 by filing a complaint alleging he was being denied access to Suboxone and Gabapentin in violation of his rights under the Eighth and Fourteenth Amendments to the United States Constitution. Doc. No. 1. Hickey moved for preliminary injunctive relief on August 7, 2019. Doc. No. 11. After briefing, the Court denied relief because (1) Hickey had already begun to receive Suboxone treatment and (2) the record demonstrated that Hickey was receiving constitutionally adequate treatment for his nerve pain. Doc. No. 33. Hickey then amended his complaint to include claims brought pursuant to the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, et seq., and the Rehabilitation Act of 1973, 29 U.S.C. § 701, et seq. Doc. No. 31. He now seeks money damages for the pain and suffering he experienced while deprived of his preferred medications.

The defendants have moved for summary judgment on Hickey's claims. Doc. Nos. 64 & 68. Hickey has opposed. Doc. No. 79. The motions are fully briefed and ripe for disposition.

II.   LEGAL STANDARDS

Summary judgment is appropriate when there is "no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). To succeed on a motion for summary judgment, the moving party must demonstrate that there is an "absence of evidence supporting the non-moving party's case." Sands v. Ridefilm Corp., 212 F.3d 657, 660 (1st Cir. 2000) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986)).

The burden then shifts to the non-moving party to set forth specific facts showing that there is a genuine issue of material fact for trial. Quinones v. Houser Buick, 436 F.3d 284, 289

(1st Cir. 2006). A genuine issue exists where the evidence is "sufficiently open-ended to permit a rational factfinder to resolve the issue in favor of either side." Nat'l Amusements, Inc. v. Town of Dedham, 43 F.3d 731, 735 (1st Cir. 1995). A material fact is "one that has the potential of affecting the outcome of the case." Calero–Cerezo v. U.S. Dep't of Justice, 355 F.3d 6, 19 (1st Cir. 2004). "If the evidence is merely colorable or is not significantly probative, summary judgment may be granted." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249–50 (1986) (internal citations omitted). In its review of this evidence, the Court must examine the facts in the light most favorable to the nonmoving party—here, Hickey—and draw all reasonable inferences in her favor. Sands, 212 F.3d at 661. "In the final analysis, . . . [the Court] is required to determine if 'there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party.'" Id. (quoting Anderson, 477 U.S. at 249).

III.    DISCUSSION

Hickey brings claims under (A) the Eighth Amendment, (B) the ADA and the Rehabilitation Act, and (C) the Fourteenth Amendment's Equal Protection and Due Process of Law Clauses.[3] Defendants, who all had some role in Hickey's treatment, argue they are entitled to summary judgment because Hickey has at all times received adequate medical treatment and because the temporary denial of Suboxone was justified by security and logistical considerations. Because Hickey's claims fail on the merits, the Court does not reach the defendants' arguments, in the alternative, that they are immune from liability.

---

[3] In addition to his freestanding constitutional claims, Hickey asserts a cause of action under 24 U.S.C. § 1983. Doc. No. 31 at 10. Section 1983 is not itself a source of substantive rights. Rather, it is a means by which litigants complaining of a violation of a constitutional right may bring their claim before a court. Arpin v. Santa Clara Valley Transp. Agency, 261 F.3d 912, 925 (9th Cir. 2001). For the sake of simplicity, the Court shall analyze Hickey's freestanding constitutional claims as though they were brought pursuant to Section 1983.

A.    <u>The Eighth Amendment Claim</u>

    a.  *Temporary Suboxone Denial*

Hickey argues the defendants' temporary refusal to provide him with Suboxone during the time it took to implement the MAT program constituted cruel and unusual punishment in violation of the Eighth Amendment. To prevail on an Eighth Amendment claim of deliberate indifference based on inadequate or delayed medical care, a plaintiff must satisfy both an objective and subjective inquiry. <u>See, e.g.</u>, <u>Perry v. Roy</u>, 782 F.3d 73, 78 (1st Cir. 2015). The objective prong requires the plaintiff establish that his medical need is or was "sufficiently serious," <u>Burrell v. Hampshire Cnty.</u>, 307 F.3d 1, 8 (1st Cir. 2002), meaning it was either diagnosed by a physician as mandating treatment or is so obvious that a layperson would recognize the need for medical assistance, <u>see</u> <u>Gaudreault v. Mun. of Salem</u>, 923 F.2d 203, 208 (1st Cir. 1990). To prevail on the subjective prong, the plaintiff must show the defendants acted with intent or wanton disregard when providing inadequate care. <u>See</u> <u>Perry</u>, 782 F.3d at 79.

Hickey has failed to establish the subjective prong of his claim as to the temporary denial of Suboxone. Deliberate indifference is a higher standard than negligence or lack of ordinary due care for a prisoner's safety, <u>Farmer v. Brennan</u>, 511 U.S. 825, 835 (1994), and may be "exhibited by a 'wanton disregard' to a prisoner's needs." <u>Kosilek v. Spencer</u>, 774 F.3d 63, 83 (1st Cir. 2014) (quoting <u>Battista v. Clarke</u>, 645 F.3d 449, 453 (1st Cir. 2011)). "[S]uch disregard must be akin to criminal recklessness, requiring consciousness of 'impending harm, easily preventable.'" <u>Id.</u> (quoting <u>Watson v. Caton</u>, 984 F.2d 537, 540 (1st Cir. 1993). Here, the defendants have submitted uncontested evidence showing they were unable to immediately accommodate Hickey's request for Suboxone until a number of steps had been accomplished. First, the defendants had to address security concerns raised by the distribution of Suboxone—a type of

opiate—in the prison environment. Like any opiate, Suboxone has a high risk of diversion and raises associated safety and security concerns for prison officials, who required time to develop a safe system for delivering the drug to incarcerated patients. Doc. No. 24-8 ¶¶ 10(A), 10(C). Prison officials may rightly consider such security issues in determining when and how to implement medical treatment. See Cameron v. Tomes, 990 F.2d 14, 20 (1st Cir. 1993) ("Any professional judgment that decides an issue involving conditions of confinement must embrace security and administration, and not merely medical judgments." (emphasis removed)). Second, Suboxone is just one component of the broader MAT program, which also involves counseling, classes, and social support services. Doc. No. 66 ¶ 6. Its use is controlled by the federal government and healthcare providers require special dispensation from the United States Department of Health and Human Services before they may administer the drug. Id. ¶ 5. It is undisputed that no medical providers with the necessary waiver were employed in the Nashua Steer Jail Hickey was first brought into custody. Id. Nor were any employed in the Suffolk County House of Correction, where Hickey was later transferred. Id. And it is further undisputed that the tendering and contracting process to secure a licensed and qualified MAT treatment provider, able to provide all of the necessary programing, took several months and that Hickey was granted Suboxone treatment as soon as this process concluded. Id. ¶¶ 6–7. During the time it took to implement the MAT program, the record reflects the defendants provided Hickey with medically supervised detoxication treatment. Doc. No. 66 ¶¶ 11–16. As part of this treatment, Hickey was prescribed with Clonidine (scheduled twice daily), and Dicyclomine, Loperamide, Ondansetron, and Ibuprofen (as needed) to help relieve the symptoms of opiate withdrawal. Id. ¶ 11. He was also visited twice a day by medical personnel during withdrawal to monitor his progress. Id. ¶ 13. Although Hickey is clear he would have preferred to receive Suboxone rather

than suffer withdrawal, the use of medically supervised detoxification is not itself per se evidence of deliberate indifference to the medical needs of a prisoner suffering from addiction. Ramos v. Patnaude, 640 F.3d 485, 489–91 (1st Cir. 2011) (Souter, J.) (holding medical provider overseeing prisoner's detoxification treatment was not deliberately indifferent); cf. Watson, 984 F.2d at 540 (noting courts "have consistently refused to create constitutional claims out of disagreements between prisoners and doctors about the proper course of a prisoner's medical treatment").[4] The record reflects, and Hickey appears to agree, that the defendants enrolled him in Suboxone treatment as soon as they had addressed these security and logistical concerns and developed a safe and effective way of administering the MAT program. Doc. No. 66 ¶ 52; Doc. No. 31 ¶ 23. In summary, the undisputed facts show the defendants provided Hickey with Suboxone as soon as they were able, and that they provided him with a reasonable alternative form of treatment in the interim.

Hickey has presented no evidence contradicting the defendants' explanation for the delay in MAT treatment. He has not suggested the MAT program could have been implemented more expeditiously. Nor has he offered evidence to suggest the prison official's security concerns were overblown. True, Hickey denies that he himself presented a security risk, pointing to the fact he has never diverted medication during his time in prison. Doc. No. 79 ¶ 34.[5] But prison

---

[4] Hickey has not argued the detoxification treatment he received fell below constitutional norms when measured against other similar treatments. His challenge is focused on the decision to temporarily use detoxification treatment instead of immediately providing Suboxone. See Doc. No. 79. This distinguishes this case from Pesce v. Coppinger, 355 F. Supp. 3d 35 (2018), where the plaintiff presented evidence that the detoxification treatment he received was based on a failure to consider his medical needs and was so "arbitrary or capricious[ ]as to imply that it was pretext for some discriminatory motive." Id. at 47 (citation omitted).

[5] Although not submitted in the form of evidence, the Court assumes that Hickey would be able to present this statement in an admissible form at trial and therefore considers it at this stage of the proceeding for the sake of argument.

administrators enjoy considerable deference when acting to preserve institutional security and the fact Hickey has never diverted medication before does not mean he would not do so in the future, absent proper security measures. Cf. Bell v. Wolfish, 441 U.S. 520, 546–48 (1979) (explaining, in related context, the importance of allowing prison officials "wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security"). Upon this record, no reasonable jury could conclude the defendants demonstrated deliberate indifference to Hickey's medical needs. Summary judgment must enter as to this claim.

      a. *Gabapentin Denial*

Hickey also argues the defendants' denial of Gabapentin to manage his nerve pain violates the Eighth Amendment. To be clear, Hickey does not argue that his nerve pain has gone untreated, rather he objects that he has not been given the specific medication he was taking prior to incarceration. See Doc. No. 31. It is undisputed that the defendants have provided Hickey with a wide variety of treatments to aid in managing his pain. These treatments have included medication, Doc. No. 66 ¶¶ 15, 24, 27, 29, 33, 34, 42, 43, 46, 67, 99, 100, 104, steroid and anti-inflammation injections, id. ¶¶ 45, 48, 50, 82 83, adjustments to Hickey's living conditions, id. ¶ 13, physical exercise, id. ¶¶ 23, 34, and regular meetings with medical providers to assess Hickey's progress, id. ¶¶ 10–103. Indeed, the defendants' treatment regime appears to be working: Hickey recently informed his healthcare provider that he feels he no longer needs Gabapentin and that he prefers a different medication he has been prescribed. Id. ¶ 100.[6]

---

[6] The defendants at one point offered to allow Hickey to received Gabapentin if he agreed to reside in the Medical Housing Unit while receiving the treatment. Doc. No. 66 ¶ 40. Hickey refused, saying he "does not feel that he needs it that much." Id.

"[W]here a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law." Layne v. Vinzant, 657 F.2d 468, 474 (1st Cir. 1981) (quoting Westlake v. Lucas, 537 F.2d 857, 860 n.5 (6th Cir. 1976)); accord Kosilek, 774 F.3d at 82 (noting the Eighth Amendment "does not impose upon prison administrators a duty to provide care that is ideal, or of the prisoner's choosing"). This is particularly true when there are security concerns associated with the particular drug sought by the prisoner. See Todd v. Bigelow, No. 2:09-CV-808 DAK, 2012 WL 627965, at *6 (D. Utah Feb. 24, 2012) (granting summary judgment on prisoner's Eighth Amendment claim for denial of Gabapentin in part because decision to use alternative medication was supported by security concerns); Mesa v. Ryan, No. CV 17-03039-PHX-DGC (MHB), 2019 WL 568937, at *2 (D. Ariz. Feb. 12, 2019) (same, noting "Gabapentin is highly regulated in the correctional setting because it is addictive and the potential for abuse, misuse, and diversion is significant").

This case is similar to Roman-Montañez v. Torres–Mendez, 284 F. Supp. 3d 134 (D.P.R. 2018). There, a prisoner claimed his treating physician's refusal to prescribe him Gabapentin for lower back pain violated the Eighth Amendment. Id. at 139. As here, the plaintiff had received treatment for his pain and challenged only the specific denial of Gabapentin. Id. The Roman-Montañez court rejected the prisoner's claim, explaining that the prisoner was "not entitled [under the Eighth Amendment] to select the particular pain medication of his choosing." Id. (citing Kosilek, 774 F.3d at 82). The court held that the "extent of [the prisoner's] medical treatment, including therapy and access to several medications, negates a finding of deliberate indifference to [his] medical needs." Id. at 140. The same is true here. Hickey has received extensive treatment for his nerve pain—the fact that he would prefer to be prescribed a different

11

treatment does not, without more, constitute an Eighth Amendment violation. Summary judgment must enter on this claim.

From the undisputed facts in the record, no reasonable jury could conclude that the defendants have demonstrated deliberate indifferent to Hickey's medical needs. Consequently, the defendants are entitled to summary judgment on Hickey's Eighth Amendment claims.

B.      The ADA and Rehabilitation Act Claims

Hickey argues the defendants' refusal to provide him with his preferred medications constitutes a violation of the ADA and the Rehabilitation Act. These statutes "prohibit discrimination against an otherwise qualified individual based on his or her disability. The Rehabilitation Act, the precursor of the ADA, applies to federal agencies, contractors and recipients of federal financial assistance, while the ADA applies to private employers with over 15 employees and state and local governments." Calero–Cerezo, 355 F.3d at 19. Although the two statutes regulate different entities, their substantive standards are essentially the same. See Parker v. Universidad de P.R., 225 F.3d 1, 4 & n.2 (1st Cir. 2000) (explaining Title II "essentially extends the reach of" and is "modeled on" the Rehabilitation Act and that courts may "rely interchangeably on decisional law" applying either statute). As an essential element of his ADA and Rehabilitation Act claims, Hickey must show "(1) that he is a qualified individual with a disability; (2) that he was either excluded from participation in or denied the benefits of some public entity's services, programs, or activities . . .; and (3) that such exclusion, denial of benefits or discrimination was by reason of his disability." Toledo v. Sanchez, 454 F.3d 24, 31 (1st Cir. 2006) (explaining standard for Title II ADA claims) (citing Parker, 225 F.3d at 4)[7]; see

---

[7] Although Hickey does not specify, the Court assumes he intended to bring his claim under Title II of the ADA, which applies to services provided by public entities. 42 U.S.C. § 12132.

also McDonald v. Commonwealth, 901 F. Supp. 471, 477 (D. Mass. 1995) (explaining standard for Rehabilitation Act claims).

The evidence in the record forecloses a reasonable fact finder from concluding that Hickey was denied his preferred medications "by reason of his disability." Kiman v. N.H. Dep't of Corr., 451 F.3d 274, 283 (1st Cir. 2006). Although medical care is one of the "services, programs, or activities" covered by the statutes Hickey cites, see United States v. Georgia, 126 S. Ct. 877, 881 (2006), courts "differentiate ADA [and Rehabilitation Act] claims based on negligent medical care from those based on discriminatory medical care." Kiman, 451 F.3d at 284 (citing Fitzgerald v. Corr. Corp. of Am., 403 F.3d 1134, 1144 (10th Cir. 2005) ("[P]urely medical decisions . . . do not ordinarily fall within the scope of the ADA or the Rehabilitation Act.")). As the First Circuit has explained:

> [A] plaintiff's showing of medical unreasonableness [under the Rehabilitation Act] must be framed within some larger theory of disability discrimination. For example, a plaintiff may argue that her physician's decision was so unreasonable—in the sense of being arbitrary and capricious—as to imply that it was pretext for some discriminatory motive, such as animus, fear, or apathetic attitudes. Or, instead of arguing pretext, a plaintiff may argue that her physician's decision was discriminatory on its face, because it rested on stereotypes of the disabled rather than an individualized inquiry into the patient's condition—and hence was unreasonable in that sense.

Lesley v. Chie, 250 F.3d 47, 55 (1st Cir. 2001) (internal quotation marks and citations omitted); see Kiman, 451 F.3d at 284–85 (quoting Lesley with approval in ADA context).

No reasonable factfinder could conclude the defendants' decision to deny Suboxone and Gabapentin to Hickey was so unreasonable as to suggest they were discriminating against him because of his disabilities. As discussed above, the defendants delayed providing Suboxone treatment until they had resolved the security and logistical concerns attendant with launching a MAT program in the context of a prison environment. Any inference that the denial of Suboxone was motivated by animus towards those addicted to opiates is rebuffed by the fact defendants are

currently providing Hickey with that drug. There is no evidence suggesting the defendants
needlessly delayed providing MAT treatment and the undisputed facts show they provided
Hickey with alternative forms of treatment until they could safely and effectively begin
providing him with Suboxone. Similarly, the defendants may have denied Hickey his preferred
pain management medication, Gabapentin, but the undisputed facts show the defendants
provided Hickey with a wide variety of alternative treatments to help him manage his nerve pain.
Indeed, the defendants arranged frequent medical appointments for Hickey in which medical
personnel worked with Hickey to adjust his pain management treatment—ultimately settling on
an alternative medication which, it appears from the record, Hickey preferred to Gabapentin.
Doc. No. 66 ¶ 100.

The conclusion the defendants behaved reasonably in treating Hickey's conditions is
reinforced by the security concerns associated with Hickey's preferred medications. As with
Eighth Amendment claims, prison officials may consider institutional security in responding to
the needs of qualified individuals under the ADA and the Rehabilitation Act. See Kiman, 451
F.3d at 285 (affirming summary judgment on prisoner's Title II claim for temporary denial of the
use of a cane because, among other reasons, it "could be used as a weapon"). The Court has
already noted that both Suboxone and Gabapentin are at high risk of diversion in prisons. When
the undisputed facts in the record are considered, no reasonable factfinder could conclude the
defendants' denial of Hickey's preferred medications was "so unreasonable—in the sense of
being arbitrary and capricious—as to imply that it was pretext for some discriminatory motive."
Lesley, 250 F.3d at 55. Consequently, Hickey is unable to establish an essential element of his
claims under the ADA and the Rehabilitation Act. Summary judgment must enter as to these
claims.

C.        The Fourteenth Amendment Claims

Finally, Hickey asserts claims under the Equal Protection and Due Process Clauses of the Fourteenth Amendment.

Hickey argues that the defendants' denial of his preferred medical prescriptions violated the Fourteenth Amendment Equal Protection Clause's command that no State shall "deny to any person within its jurisdiction the equal protection of the laws." U.S Const. amend. XIV, § 1. An equal protection claim may lie when a plaintiff has been "treated differently from others similarly situated . . . based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person." Wilborn v. Walsh, 584 F. Supp. 2d 384, 394 (D. Mass. 2008) (omission in original) (quoting Clark v. Boscher, 514 F.3d 107, 114 (1st Cir. 2008)); see also City of Cleburne v. Cleburne Living Ctr., 473 U.S. 432, 446–47 (1985) (explaining the Equal Protection Clause prohibits governmental classification "whose relationship to an asserted goal is so attenuated as to render the distinction arbitrary or irrational" or is motivated by "'a bare . . . desire to harm a politically unpopular group'" (quoting U.S. Dep't of Ag. v. Moreno, 413 U.S. 528, 534 (1973))).

Here, Hickey alleges his equal protection rights were violated because the defendants "impermissibly discriminated against him on the basis of addiction and disease as well as disability." Doc. No. 31 at 9. The undisputed facts, however, foreclose Hickey's claim. As to the denial of Gabapentin, there is no evidence that defendants treated Hickey differently from any other inmate in denying him access to this medication. There is no evidence, for example, that other inmates have been provided with Gabapentin or with similar drugs which present the same security concerns. Nor could a rational factfinder find the denial of Gabapentin was malicious— as detailed above, the undisputed evidence Hickey has received alternative treatment forecloses

15

such a conclusion. The same is true as to the temporary denial of Suboxone. Hickey has not offered evidence suggesting the defendants allowed other inmates to access Suboxone before him. See Niemic v. UMass Corr. Health, 89 F. Supp. 3d 193, 210 (D. Mass. 2015) (granting summary judgment on inmate's equal protection claim for denial of MAT when inmate could not show other similarly situated prisoners had been enrolled in treatment). Nor can it reasonably be found that the temporary denial of Suboxone was irrational or motivated by "a bare . . . desire to harm a politically unpopular group." City of Cleburne, 473 U.S. at 447 (quoting Moreno, 413 U.S. at 534). As discussed above, the record compels the conclusion the defendants delayed Suboxone treatment for rationale and legitimate reasons, namely the logistical and security concerns associated with rolling out MAT programming in the prison environment. Hickey has offered no evidence to suggest the defendants could have provided him with Suboxone any quicker. And the fact that defendants are now providing Hickey with Suboxone treatment strongly rebuts any suggestion the delay was caused by prejudice towards drug addicts. Doc. No. 66 ¶¶ 6–7. Consequently, summary judgment must enter on this claim.

Hickey's Amended Complaint contains no discernable basis for his claim under the Fourteenth Amendment's Due Process of Law Clause, see generally Doc. No. 31, and he does not defend the claim in his Opposition to Summary Judgment, see generally Doc. No. 79. Nor can he. The Due Process Clause of the Fourteenth Amendment states in relevant part that no state shall "deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, cl. 1. The Supreme Court has recognized that inmates are entitled to limited due process rights. See Sandin v. Conner, 515 U.S. 472, 479 n.4 (1995).

"Inmates have a due process interest that is 'generally limited to freedom from restraint which . . . imposes atypical and significant hardship' on an inmate as compared to the 'ordinary

incidents of prison life.'" <u>Niemic v. Maloney</u>, 448 F. Supp. 2d 270, 280 (D. Mass. 2006) (omission in original) (quoting <u>Sandin</u>, 515 U.S. at 484). "Failure to receive one's preferred pain medication or treatment program is 'neither related to freedom of restraint nor an atypical and significant hardship.'" <u>UMass Corr.</u>, 89 F. Supp. 3d at 210 (quoting <u>Maloney</u>, 448 F. Supp. 2d at 280). Hickey's due process claim thus fails as matter of law. <u>See</u> <u>Celotex Corp.</u>, 477 U.S. at 322.

IV.    <u>CONCLUSION</u>

    For the foregoing reasons, the NaphCare Defendants' Motion for Summary Judgment (Doc. No. 64) and the Suffolk County Defendants' Motion for Summary Judgment (Doc. No. 68) are ALLOWED. Judgment shall issue accordingly.


                        SO ORDERED.


                         /s/ Leo T. Sorokin
                        Leo T. Sorokin
                        United States District Judge